Filed 6/22/16  P. v. Gonzales CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E063783 |
| v. | (Super.Ct.No. RIF1311577) |
| JOHN ERNESTO GONZALES, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Becky Dugan, Judge.

Modified and affirmed with directions.

James M. Crawford, under appointment by the Court of Appeal, for Defendant and

Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General,

and Peter Quon, Jr., and Stacy Tyler, Deputy Attorneys General, for Plaintiff and

Respondent.

A jury found defendant John Ernesto Gonzales guilty of one count of residential burglary (Pen. Code,[1] § 459; count 1) and one count of assault with a deadly weapon other than a firearm (§ 245, subd. (a)(1); count 2). The trial court sentenced him to five years in state prison, consisting of a four-year sentence on count 1, and a consecutive one-year sentence on count 2. The court also ordered defendant to pay various fines and fees, as well as restitution.

On appeal, defendant raises three claims of error. First, he argues that the trial court erred by refusing to instruct the jury on self-defense. Second, he argues that his one-year sentence on count 2 should have been stayed pursuant to section 654. Third, he argues that a $300 restitution fine and a $300 parole revocation fine imposed by the trial court should both be reduced to $280.

The People concede that the fines should be reduced. We agree, and will order the abstract of judgment to be modified accordingly. In all other respects, the judgment will be affirmed.

## I. FACTS AND PROCEDURAL BACKGROUND

On October 12, 2013, the three victims in this case—a husband, a wife, and their daughter—arrived home from running an errand to see an unfamiliar pickup truck parked in their driveway. Two individuals, defendant and a younger male accomplice, had broken into the house through a previously locked door, ransacked the house, and were loading the truck with the family's belongings. The husband recognized defendant as an acquaintance, a friend of his brother, whom he owed a small sum of money (under $50).

---

[1] Further undesignated statutory references are to the Penal Code.

2

The wife parked their vehicle in front of the truck, blocking it from driving away, and the family exited their vehicle. Defendant's accomplice was heard to say "'I gotta go. I gotta go,'" and defendant responded "'Go ahead. Run. I can't go.'" Instead of one or both burglars immediately fleeing, however, there was a physical altercation between them and the victims. During the course of that altercation, the husband, who walks with a cane, slipped and fell on his back. One of the two burglars—apparently defendant's accomplice, though there was some confusion in trial testimony on that point—was armed with a crowbar; from the ground, the husband was able to ward off repeated blows from the crowbar with his cane. The other burglar, apparently defendant, was armed with a screwdriver, and also stood over the fallen husband, menacing him with the weapon. From the ground, the husband was able to strike defendant in the face with his cane. Police arrived shortly thereafter. Defendant's accomplice ran away, but defendant did not; defendant seemed out of breath, and was bleeding from the blow to his face.

During trial, defense counsel requested that the jury be instructed on self-defense. The trial court denied the request.

The jury returned its verdicts on March 6, 2015. On April 17, 2015, the trial court imposed a four-year sentence with respect to count one, and a consecutive one-year term with respect to count 2.

The court also imposed various fines and fees, including a $300 restitution fine and a $300 parole revocation fine. During sentencing, the trial court remarked that all of the fines imposed were "the lowest I can give."

3

## II. DISCUSSION

### A. The Trial Court Properly Refused to Instruct the Jury on Self-defense.

Defendant contends the trial court erred by refusing to instruct the jury on self-defense. We disagree.

A trial court must give a particular instruction requested by the defendant only when substantial evidence supports it. (*People v. Barnett* (1998) 17 Cal.4th 1044, 1145.) Whether the evidence is sufficient to support such an instruction is a question of law. (*Ibid.*)

There is no substantial evidence in support of a self-defense instruction. The uncontradicted evidence was that defendant and his accomplice stood over a fallen man, menacing him with weapons. To be sure, the victim managed to strike defendant in the face with his cane, while defendant apparently failed to succeed in striking the victim. This circumstance is not substantial evidence that defendant was acting in self-defense, as he would have it, only that defendant was an ineffectual attacker.

Defendant makes much of the daughter's choice of words during her testimony at trial, describing the events as a "confrontation," rather than an assault on her father. The daughter's testimony, however, was unambiguous: defendant was the aggressor, "coming at" her father with a weapon. Though she never saw defendant succeed in striking her father, it was not for lack of trying; she did see defendant "swing at" her father and try to hit him even after he had fallen, instead of taking the opportunity to disengage. The daughter's testimony is not substantial evidence in support of defendant's theory. Quite

4

the contrary, it directly undermines the notion that defendant was only trying to defend himself.

In short, the trial court correctly refused to instruct the jury on self-defense, because there was no substantial evidence in support of such an instruction.

**B. The Trial Court Did Not Err By Imposing Consecutive Terms, Instead of Staying the Sentence on Count 2.**

Defendant argues that his sentence on count two should have been stayed pursuant to section 654, because his two charges arose from a single, indivisible course of conduct. We disagree.

"Section 654 precludes multiple punishment for a single act or omission, or an indivisible course of conduct." (*People v. Deloza* (1998) 18 Cal.4th 585, 591.) "Whether a course of criminal conduct is a divisible transaction which could be punished under more than one statute within the meaning of section 654 depends on the intent and objective of the actor." (*People v. Saffle* (1992) 4 Cal.App.4th 434, 438.) "In the absence of any reference to Penal Code section 654 during sentencing, the fact that the court did not stay the sentence on any count is generally deemed to reflect an implicit determination that each crime had a separate objective." (*People v. Tarris* (2009) 180 Cal.App.4th 612, 626-627.) "'The determination of whether there was more than one objective is a factual determination, which will not be reversed on appeal unless unsupported by the evidence presented at trial.' [Citations] '[T]he law gives the trial court broad latitude in making this determination.'" (*People v. Wynn* (2010) 184 Cal.App.4th 1210, 1215 (*Wynn*).)

5

The trial court's implicit determination that defendant acted with separate objectives in committing the burglary and the assault is supported by substantial evidence. It is reasonable to infer that the objective of the burglary was to obtain property, specifically, the property the two burglars were in the process of loading into their truck when the victims interrupted them by arriving home. The objective of the subsequent assault was to avoid being apprehended; defendant apparently was unable to run away, and both burglars resorted to force. These separate objectives mean that the crimes are properly punished separately.

Defendant contends that he had "only one criminal objective—to burgle the home and escape." Similar arguments have been rejected under similar circumstances, however, by a number of courts. (*Wynn, supra*, 184 Cal.App.4th at pp. 1215-1216 [rejecting argument that defendant's objective in committing burglary and assaults was indivisible course of conduct, and collecting cases].) Defendant distinguishes *Wynn* on its facts, noting that the victim here was not a police officer or a private security guard. We are not persuaded, however, that this is a distinction that makes a difference. The point is that defendant's objective changed from obtaining property to effecting an escape, regardless of the identity of the individuals from whom he sought to escape.

Defendant points to *People v. Guzman* (1996) 45 Cal.App.4th 1023, in support of his argument. In that case, the defendant had been convicted of burglary, grand theft, and robbery; the burglary occurred when the defendant entered a garage to steal a motorcycle, the grand theft—when he loaded it into his truck, and the robbery—when he beat the homeowner who tried to stop the theft. (*Id.* at pp. 1025-1026.) The court of appeal held

6

that section 654 required the robbery count to be stayed.  (*Guzman*, *supra*, at pp. 1028-1029.)  Burglary and robbery, however, are both theft offenses, and in *Guzman* both convictions were based on theft of the same object.  The circumstances of the present case are different; defendant's second conviction is for assault, not robbery or any other theft offense.

Other authority on which defendant relies is simply inapposite.  Neither *People v. Bodely* (1995) 32 Cal.App.4th 311, addressing the scope of felony murder liability, nor *People v. Ramirez* (1979) 93 Cal.App.3d 714, considering the application of enhancements for causing the infliction of great bodily injury on the victims during the course of a burglary or certain other offenses, has any applicability to the present case.  Defendant's point, apparently, is that a burglary may sometimes be a part of the same continuous course of conduct as an assault.  That is true enough, but has little bearing on the issue of whether the trial court's implicit determination based on the evidence presented at trial—that defendant acted with separate intents and objectives in the commission of *this* burglary and *this* assault—was supported by substantial evidence.  It was, so we find no error.

## C.  The Abstract of Judgment Must Be Corrected to Reflect the Correct Amounts for the Restitution Fine and Parole Revocation Fine.

The People and the defendant agree, as do we, that the trial court intended to impose the minimum restitution and parole revocation fines authorized by statute.  The trial court erred, however, in translating that intention into a dollar amount.  We will order the abstract of judgment corrected to give effect to the trial court's stated intention.

7

The offenses at issue were committed in 2013. The minimum restitution and parole revocation fine in effect at that time was $280. (§§ 1202.4, subd. (b)(1) [setting minimum and maximum amounts for restitution fine], 1202.45, subd. (a) [parole revocation fine shall be same amount as restitution fine].) The trial court erred by imposing these fines using the current minimum amount of $300, which did not go into effect until January 1, 2014. (§ 1202.4, subd. (b)(1).)

We have the authority to correct such errors without remanding for further proceedings. (*People v. Smith* (2001) 24 Cal.4th 849, 854.) We find it appropriate to do so.

## III. DISPOSITION

The judgment is hereby modified so as to reduce both the restitution fine and the parole revocation fine from $300 to $280. The trial court is directed to modify the abstract of judgment accordingly, and to send a copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

HOLLENHORST
Acting P. J.

We concur:

MILLER
J.

SLOUGH
J.